IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH ANN MCCULLOUGH, ) <br> f/k/a Elizabeth Ann Emmons  ) <br>  ) <br> Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> JO ANNE B. BARNHART, ) <br> Commissioner of Social Security, ) <br>  ) <br> Defendant. ) | CIVIL NO. 04-919-PMF |

**MEMORANDUM AND ORDER**

**FRAZIER, Magistrate Judge:**

Plaintiff, Elizabeth Ann McCullough, seeks judicial review of a final decision of the Commissioner of Social Security denying her January, 2003, application for supplemental security income. This application was denied following an administrative determination that McCullough was not disabled. The decision became final when the Appeals Council declined to review a decision reached by an Administrative Law Judge (ALJ). Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be

followed in determining whether a claimant is disabled. 20 C.F.R. § 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

At the time of the ALJ's decision, plaintiff was 41 years old. She has an associate's degree and work experience as a secretary, laborer, cashier and retail clerk. The ALJ evaluated plaintiff's application through Step 4 of the sequential analysis and decided that plaintiff's medically determinable disorders were severe in the sense that they significantly interfered with her ability to perform basic work activities but did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that plaintiff retained the ability to perform semi-skilled, light work and was unable to return to her former occupation as a retail clerk (R. 11-19).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer

to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.   Medical Judgment

Plaintiff seeks remand for further proceedings, targeting the ALJ's finding that fibromyalgia was not one of her medically determinable impairments. She claims the ALJ substituted her own medical judgment for the diagnosis of a treating physician. Defendant argues that the ALJ reasonably determined that fibromyalgia was not a medically determinable impairment and that any error was harmless.

Dr. Winters is plaintiff's primary treating physician, and has provided care for an extended period. She began evaluating plaintiff's subjective complaints of pain in 1999 (R. 167). After referrals, consultation, further evaluation, and testing, Dr. Winters diagnosed fibromyalgia in December, 2002. Plaintiff was subsequently treated for this disease (R. 149-175, 187 - 194). When state agency physicians reviewed the record, they listed fibromyalgia as plaintiff's primary diagnosis (R. 118).

When the ALJ evaluated the medical evidence, she consulted a text published in 1990 regarding fibromyalgia:

> In regard to the claimant's alleged fibromyalgia, the American College of Rheumatology established criteria in 1990 for the diagnosis of this condition. The criteria included widespread pain present for at least three months. Pain is considered widespread when a patient has pain in *both* sides of the body and has pain above *and* below the waist. There must be pain in 11 of 18 specified trigger point sites upon digital palpation. To qualify, a tender point has to be painful at palpation and not just 'tender.'

(R. 13). The ALJ determined that Dr. Winters' diagnosis of fibromyalgia was based on plaintiff's

subjective self-reported symptoms and did not meet the diagnostic criteria:

> Upon examination on June 25, 2003, Dr. Winters noted that the claimant had 'tenderness' in her lower neck, 'mild tenderness' in her elbows, and 'minimal tenderness' in the medial clavicular areas. Although the claimant reportedly exhibited considerable tenderness in her knees and sacral area, I note the diagnostic guidelines require documentation of pain, not just tenderness, of 11 of 18 specified tender point sites upon digital palpation.

(R. 16). The ALJ concluded that fibromyalgia was not a medically determinable impairment (R. 13).

ALJs must not make their own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). That is, ALJs must make disability determinations based on evidence in the record and be careful not to succumb to the temptation to play doctor. *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990).

When the ALJ compared findings reported in treatment notes to diagnostic criteria gleaned from a 14-year old medical text and decided that plaintiff's fibromyalgia was not a medically determinable impairment, she improperly substituted her personal judgment regarding the nature of plaintiff's medical condition for that of the medical professionals. *See Gister v. Massanari*, 189 F.Supp.2d 930, 934-935 (E.D. Wis. 2001)(ALJ usurped role by rejecting medical diagnosis of fibromyalgia).

Defendant argues that any error in identifying fibromyalgia as a medically determinable impairment is harmless because the ALJ adopted medical opinions that took into account the diagnosis. The Court finds that the ALJ's medical judgment is a serious error that impairs the reliability of her subsequent determination that plaintiff retained the ability to perform light work. The ALJ's viewpoint that plaintiff did not have fibromyalgia spilled over into her evaluation of medical opinion evidence and subjective complaints of pain and fatigue. Because the Court is

satisfied that a reasonable ALJ could reach a different conclusion regarding plaintiff's claim, the error requires reversal. *Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996).

## II    Treating Physician Opinion

Plaintiff also argues that the ALJ should have given her treating physician's opinion controlling weight. Defendant argues that the ALJ rationally declined to give this opinion controlling weight.

The record contains a pain questionnaire completed by Dr. Winters, a treating physician. Dr. Winters estimated that plaintiff would need long rest periods between 1-2 hour work intervals, would need to be absent from work more than three days per month, and would frequently experience symptoms severe enough to interfere with her work performance (R. 187).

The ALJ rejected Dr. Winters' opinion on the basis that it was not supported by objective signs or findings (R. 16). The ALJ adopted the opinions of state agency physicians, who evaluated the medical records and concluded that plaintiff retained the physical ability to perform light work (R. 17).

A treating physician's opinion regarding the nature and severity of a medical condition should be accorded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

The logic supporting the ALJ rejection of Dr. Winters' opinion is flawed. As the defendant concedes, fibromyalgia is not a disease that can normally be measured by traditional signs and findings. Because the ALJ is not qualified to assess the medical significance of signs such as trigger points, it was inappropriate for the ALJ to discredit Dr. Winters' opinion on the basis that the opinion lacked objective support.

Plaintiff seeks an award of benefits on the basis of Dr. Winters' opinion. Because that opinion conflicts with other evidence in the record, the opinion evidence needs to be reweighed. The Court will remand without directing the ALJ to assign controlling weight to Dr. Winters' opinion.

### III.  Credibility of Plaintiff's Subjective Statements

Plaintiff challenges the ALJ's credibility assessment, arguing that the assessment rests on fundamental implausibilities. Defendant argues that the ALJ made reasonable inferences from the record.

Plaintiff testified that she could read, write, and perform simple arithmetic. She described fatigue and constant aching and grinding pain in her lower back, neck, base of her head, legs and hips. She reported sleep disturbance, naps, and said she had difficulty with her memory and concentration. She reported daily activities that were limited by symptoms of pain and fatigue (R. 203-16).

In discrediting plaintiff's testimony, the ALJ relied, in part, on plaintiff's medical knowledge, ability to articulate, and evidence that children lived at her residence (R. 17). The record indicates that plaintiff had worked as a legal secretary, used a computer to learn about fibromyalgia, and helped her husband's daughters with their homework (R. 151, 153).

ALJs are entitled to weigh evidence. Ordinarily, a finding that a claimant's testimony is not credible is conclusive. However, when an ALJ bases a credibility determination on serious errors in reasoning, remand is required. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

Evidence that plaintiff researched her symptoms and improved her knowledge about medicine and health does not logically support a finding that she overstated or manufactured her symptoms. Similarly, evidence that children stayed in her home for a period of time does not logically support an inference that she engaged in substantial daily activities. On remand, the ALJ

should reevaluate the credibility of plaintiff's testimony in light of other evidence, including plaintiff's treatment efforts, medications, and daily activities. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p.

### IV.  Conclusion

The Commissioner's final decision regarding Elizabeth Ann McCullough's application for supplemental security income is REVERSED.  This case is REMANDED for further proceedings and a new decision pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ shall reweigh medical opinion evidence and judge the credibility of testimony in accordance with the legal standards discussed in this decision.  Judgment of reversal and remand shall enter pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED:   April 18, 2006   .

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**